FILED
2024 Sep-17  AM 09:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| HERITAGE MINISTRIES D/B/A, HOMESTEAD HERITAGE; HERITAGE BARNS, LLC D/B/A HERITAGE RESTORATIONS; MATTHEW BRANDSTADT; BRIAN BRANDSTADT; and DANIEL BRANDSTADT, <br><br> Plaintiffs, <br><br> v. <br><br> HEIDI CAROLINE FEEK; TOWNSQUARE MEDIA, INC. D/B/A TASTE OF COUNTRY; and CARENA ELIZABETH LIPTAK, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Case No. |

## **COMPLAINT**

Plaintiffs Heritage Ministries d/b/a Homestead Heritage ("Homestead Heritage"), Heritage Barns, LLC d/b/a Heritage Restorations ("Heritage Restorations" and together with Homestead Heritage, "Heritage"), Matthew Brandstadt, Brian Brandstadt, and Daniel Brandstadt (the "Brandstadts" and together with Heritage, "Plaintiffs") complain against Defendants Townsquare Media, Inc. d/b/a Taste of Country ("Taste of Country"), its Associate Editor and Staff Writer, Carena Elizabeth Liptak ("Ms. Liptak") (with Taste of Country, the "Townsquare Defendants") and Heidi Caroline Feek ("Ms. Feek") regarding Ms. Feek's ongoing

1

defamation of Plaintiffs and the libelous Taste of Country news article written, published, and distributed by the Townsquare Defendants. In support of this Complaint, the Plaintiffs state the following:

## Nature of the Action

1.      This action arises out of a family dispute between country music star Rory Feek ("Rory") and his daughters, Heidi and Hopie Feek, regarding their ten-year-old half-sister ("the Minor"). The Minor, who has Down Syndrome, lives in Columbia, Tennessee with her father Rory and stepmother. The Minor is in the custody of Rory and has been her entire life. Although Rory previously allowed the Minor to visit Ms. Feek and her partner Jeffery Dillon Hodges ("Mr. Hodges") at their home in Florence, Alabama, Rory stopped allowing those visits in September 2023 because Ms. Feek and Mr. Hodges refused to respect Rory's wishes while the Minor was there. Mr. Hodges and Ms. Feek have apparently initiated legal action in the Juvenile Court for Maury County, Tennessee, seeking changes to the Minor's custodial arrangement.

2.      Plaintiffs have no direct connection to the dispute between Ms. Feek and Rory, but they have, unfortunately, been dragged into the middle of it. Ms. Feek claims to be concerned for the Minor's safety and has taken to social media to "out" Rory and to decry the church community that she claims he is now part of, Plaintiff Homestead Heritage, along with its associated enterprise Heritage Restorations and

the family that partly owns Heritage Restorations, the Brandstadts. Whatever grievances Ms. Feek may have with her father, those do not give her the right to disseminate inflammatory lies and misinformation about the Plaintiffs. Ms. Feek and the Townsquare Defendants have used their respective social media platforms—Ms. Feek's social media account (which has over 48,000 followers) and the Taste of Country website (which claims 716,000 visitors) and its social media channels (which has over 500,000 followers on X, formerly Twitter)—to make false, defamatory, and harmful statements about Heritage and the Brandstadts and have refused to correct or retract those statements, even when confronted with the truth. Plaintiffs have had to resort to filing this lawsuit to preserve their good reputation and maintain the work in furtherance of their ministry.

## **Parties**

3.      Plaintiff Heritage Ministries d/b/a Homestead Heritage is a Texas nonprofit corporation based in McLennan County, Texas. It is a Christian community that celebrates its faith by pursuing a simple, agrarian lifestyle and promotes that faith by hosting hundreds of thousands of guests annually to its craft village, country markets, fall harvest festival and annual Homestead Fair. There are approximately 1,200 members of the church locally and 200,000 visitors to the village each year.

4891-7606-7811.10

4.      Plaintiff Heritage Barns, LLC d/b/a Heritage Restorations is a Texas limited liability company and is headquartered in Texas. The members of Heritage Restorations are citizens of the States of Texas and Montana, and no member is a citizen of the State of Alabama, Kentucky, or New York.

5.      Plaintiffs Matthew Brandstadt, Brian Brandstadt, and Daniel Brandstadt are individual residents and citizens of the State of Montana. Matthew Brandstadt is a Homestead Heritage member and part owner of Heritage Restorations.

6.      Defendant Heidi Caroline Feek is an individual resident of the State of Alabama, domiciled in Florence, Alabama, and is a citizen of the State of Alabama. Ms. Feek's personal Instagram account (@feekyfeek) has more than 48,200 followers.

7.      Upon information and belief, Defendant Townsquare Media, Inc. d/b/a Taste of Country is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1 Manhattan Rd., Suite 202, Purchase, New York 10577, making it a citizen of the States of New York and Delaware. At all times material hereto, Townsquare has owned and operated a website at the URL: www.tasteofcountry.com (the "Website"). Its Website claims over 700,000 unique visitors and its X (formerly Twitter) account boasts more than 555,000 followers.

4891-7606-7811.10

8.     On information and belief, Defendant Carena Liptak is an individual resident of the State of New York, and thus a citizen of the State of New York. Alternatively, Ms. Liptak may be a citizen of the State of Kentucky. Ms. Liptak is an Associate Editor and Staff Writer at Taste of Country.

### Jurisdiction and Venue

9.     Under 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over Plaintiffs' claims where the parties are citizens of different states, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000). Plaintiffs' claims arising under the laws of the State of Alabama are properly before this Court under its diversity and supplemental jurisdiction under 28 U.S.C.§1367.

10.     Under 28 U.S.C. § 1391(b)(2), the venue is proper in this United States District Court because it is the judicial district in which a substantial part of the events giving rise to the claims occurred. Ms. Feek's defamatory statements were written, published, and distributed from this judicial district. The defamatory statements by the Townsquare Defendants were written, published and distributed through the Taste of Country news website on August 29, 2024, and were distributed purposefully to a worldwide audience through the internet and its various distribution constituents. Accordingly, both jurisdiction and venue in the United States District Court for the Northern District of Alabama, Northwestern Division, is proper.

4891-7606-7811.10

11.    This Court has both general and specific jurisdiction over Ms. Feek, who is a citizen of Alabama and domiciled in Lauderdale County, Alabama. Ms. Feek is subject to specific jurisdiction because the causes of action asserted in this Complaint arise from her defamatory statements made in Alabama and causing tortious injury by acts or omissions in Alabama and particularly in Lauderdale County, Alabama.

12.    This Court has specific personal jurisdiction over Townsquare Defendants under Alabama's long-arm statute, as well as under the Due Process Clause of the U.S. Constitution, because, among other things, the causes of action asserted in this Complaint arise from Defendants' transacting business in Alabama and causing tortious injury by acts or omissions in Alabama and particularly in Lauderdale County, Alabama. Townsquare advertises on its website that it has nine (9) local brands in Alabama. Moreover, by interviewing Ms. Feek in Alabama and publishing the defamatory statements in the Taste of Country website, the Townsquare Defendants purposefully established significant contact with Alabama. Moreover, exercising jurisdiction here would not offend traditional notions of fair play and substantial justice because Townsquare Defendants could and should have foreseen being sued in an Alabama federal or state court to account for their defamatory statements arising from its contacts with Alabama.

4891-7606-7811.10

13.     Moreover, the Townsquare Defendants knew that Ms. Feek was a resident of Alabama and that their purposeful act of writing and publishing about the Feeks' actions in Alabama manifests intent to aim their defamatory publication into Alabama at an Alabama audience and in regard to Alabama citizens.

14.     On information and belief, Taste of Country also regularly solicits business in Alabama and derives substantial revenue from advertising resulting from directing news and other publications, including the articles at issue in this action, into Alabama and to the residents of Alabama.

15.     On information and belief, Ms. Liptak conducted multiple interviews in and directed myriad communications via phone and email into Florence, Alabama as part of her prepublication "investigative" work in authoring the news article that is a subject of the suit.

16.     Accordingly, the venue is proper in this Court, and this Court has jurisdiction here because the defamatory statements and associated activity arose and occurred in this District.

## Facts

17.     Homestead Heritage was formed in June 1973. The original 30 members of Homestead Heritage focused on growing their own food, home education, and home birth. Subsequently, they grew in number, and over 100 members moved to Colorado and later expanded to Texas, where they continued

practicing horse farming, engaging in sustainable old-world crafts, and conducting organized fairs for the public which teach these old-world crafts and other sustainable practices, and where both worship and other music are played. Since then, the Homestead Heritage community has focused on preserving the enduring values of simplicity, sustainability, self-sufficiency, cooperation, service, quality craftsmanship, integrity, character, friendship, and close ties in family.

18.    Homestead Heritage members also encourage "peaceful coexistence with the land, other people, and other faiths." According to the Homestead Heritage website, the church shares many core beliefs with various Christian traditions. Perhaps most importantly, they believe the Bible is the inspired, infallible, authoritative Word of God, providing the foundation for all faith and practice.

19.    The Homestead Heritage community is now made up of approximately 240 families—less than 20% of them live on community property in Central Texas, and the remainder live on their own personal properties in the surrounding area.

20.    The community has sought the attitudes inherent in craft to apply to all areas of life: these include care, consideration, perseverance, and a striving for quality over quantity. As a result, the community has become well-known and well-visited. Approximately 25 acres of the community property are used for the Homestead Craft Village which is open-year-round Monday through Saturday, from 10 AM to 5 PM. At the Homestead Craft Village, the public is welcome to shop for

handcrafted items, heirloom quality furniture, groceries, and more; participate in activities such as horse-drawn hay rides, tours, and field trips; enjoy fresh baked goods or delicious meals from local, natural and organic ingredients while dining at Cafe Homestead or other restaurants owned by members of the Homestead Heritage community; and, visit craft shops, meet craftsmen, and even take classes on crafts and homesteading skills. Church groups and seniors tour the village regularly. People from across the country attend Homestead Heritage workshops, and every Spring thousands of public school and private school children from all over Central Texas enjoy a day at the farm encountering, often for the first time, an agrarian life.

21.     Due to the community's emphasis on work and fine craftsmanship, members of the community began a company that specializes in restoring and rebuilding historic timber frame buildings from the 18th and 19th centuries— Heritage Restorations—which offers design, build, general contracting, and architectural services. Heritage Restorations has been very successful and has completed restoration projects around the world.

**A. Background Facts Regarding Previous Defamation and Response by Homestead Heritage.**

22.     Homestead Heritage's members are widely regarded by and fully committed to their identities as members of their beloved community, and this identity is reflected in every part of their lives, including their individual businesses and their personal and professional relationships. Defamatory statements about

Homestead Heritage therefore have amplified negative effects extending to every part of their members' lives beyond the reputational harm and actual losses to Homestead Heritage itself.

23.    Despite Homestead Heritage members' commitment to living lives exhibiting the moral and ethical standards required by their understanding of Jesus's teachings, there has been a single isolated instance in 2005, where one then-current Homestead Heritage member engaged in egregiously wrongful conduct, injuring his own child in the process. Upon the crime being voluntarily confessed by the violator to a pastor, Homestead Heritage acted on the information concerning such criminal acts by the then-current member, even helping to escort the member to the custody of the authorities. Investigating government authorities have agreed that Homestead Heritage acted proactively in identifying the situation of abuse and reporting the same to the proper authorities.  Even though Homestead Heritage had no duty to do so, it was also instrumental in bringing to justice a former member and two people who had never been parishioners of Homestead Heritage for sexual crimes against minor family members.

24.    Nonetheless, given Homestead Heritage's commitment to living out Christian values in a manner often seen as counter-cultural, these isolated incidents, none of which involved Homestead Heritage leadership and all of which were

4891-7606-7811.10

properly handled by Homestead Heritage, have led critics to generate false stories regarding Homestead Heritage.

25.    For example, on February 10, 2012, Alex Hannaford for the Texas Observer ran a defamatory story titled, "Heritage of Abuse, Texas Observer exclusive: Waco religious group accused of child abuse, beatings and cover-ups."

26.    In response to the Texas Observer article, described as "an irresponsible compilation of wild distortions, glaring omissions and outright fabrications" by Homestead Heritage, it promptly created a website to address the defamatory comments point by point.[1]

27.    In April 2012, Brett Shipp of WFAA News 8 ran a two-part feature on the Homestead Heritage community titled "Secret Lives." The WFAA story repeated the erroneous information contained in the Texas Observer piece.

28.    WFAA eventually removed their report after credible news outlets, such as KCEN HD News of Waco, Texas, demonstrated that Homestead Heritage's leadership was instrumental in bringing the perpetrators to justice.

29.    Homestead Heritage again responded quickly to combat the distortions and fabrications about its community. It published "Brief Facts about the WFAA Story"[2] and "Reality Check on Various Points in Brett Shipp's Story" on its website.[3]

---

[1] https://response.homesteadheritage.com/response-to-observer/
[2] https://response.homesteadheritage.com/response-to-brett-shipp-and-wfaa/
[3] https://response.homesteadheritage.com/reality-check-on-various-points-in-brett-shipps-story/

4891-7606-7811.10

30.    On June 10, 2012, Homestead Heritage responded to the WFAA's story by publishing a video titled, "For the Sake of the Children…"[4] This video highlights in-depth the substantial errors and omissions in WFAA's reporting and clarifies key points contradicting the now-deleted WFAA report. Contrary to WFAA's report, none of the perpetrators were living at Homestead Heritage, none were ever leaders in the church, and only one was a member at the time of the incident. Most importantly, it was the ministry of the church that revealed the crime and brought it to the attention of legal authorities.  In short, contrary to the Texas Observer and WFAA media reports, the leadership of Homestead Heritage was integral to bringing the perpetrator to justice.

31.    Moreover, even prior to the WFAA story ever airing, 90 former members of Homestead Heritage, who no longer subscribed to its beliefs or lifestyle, signed a petition categorically repudiating the absurd claim that the community hides or harbors sex offenders. WFAA was made aware of the petition prior to airing its story.

32.    After Homestead Heritage published its "For the Sake of the Children…" video and website response, WFAA eventually took down its news report and Brett Shipp left the station. The video now only exists in a few grainy, copyright-infringing versions.

---

[4] https://response.homesteadheritage.com/for-the-sake-of-the-children/

4891-7606-7811.10

**B. Facts Giving Rise to Defendants' Actionable Defamation**

33.    On July 14, 2024, Rory and the Minor's school teacher, Rebecca, got married at Greycliff Mill in Greycliff, Montana. The wedding was attended by members of Homestead Heritage, including the Brandstadts.

34.    As a result of the wedding, which Ms. Feek did not attend, Ms. Feek began posting Instagram Stories about Homestead Heritage. Ms. Feek states that the Minor was left with an unfamiliar family while Rory and Rebecca went on their honeymoon. She states that she does not believe it to be an appropriate place for the Minor.

35.    On July 20, 2024, Ms. Feek posted a picture of Greycliff Mill. She states, "[t]his is where the wedding was . . . [t]hey are the Montana branch of 'Homestead Heritage.'"

36.    Also, on July 20, 2024, Ms. Feek posted a clip of the old WFAA news report on her Instagram Stories from the bootleg version on YouTube. In the caption under the video, Ms. Feek states, "[a] quick google search will tell you more about Homestead Heritage." The clip of the WFAA report states there are allegations that church members are encouraged to brutally discipline their children, and that it is a pact between church leaders and parents. The report never provided any evidence of this non-existent pact.  During the video, it is claimed that there are five (5) convicted pedophiles connected to the Homestead Heritage church.

37.   The statements in the clip of the WFAA video posted by Ms. Feek are false and defamatory in suggesting that Homestead Heritage has ever offered any sort of teaching or encouragement to its members to brutally discipline their children and suggesting that Homestead Heritage harbors, facilitates, or hides pedophiles or child abusers.

38.   Ms. Feek knew or should have known that the statements in the WFAA video were false and defamatory based on the fact that WFAA had removed the video from its website, and that Ms. Feek had obtained it from other means, and therefore Ms. Feek acted intentionally, recklessly, or at least negligently in publishing the WFAA video.

39.   On July 21, 2024, Ms. Feek posted an Instagram story and linked the 2012 Texas Observer article. In her story, Ms. Feek states this article "highlights the abuse at Homestead Heritage, the head organization of Greycliff Mill."

40.   Ms. Feek's July 21, 2024 Instagram post is incorrect in describing Homestead Heritage as the "head organization of Greycliff Mill." Neither Homestead Heritage nor Heritage Restorations has a legal relationship with Greycliff Mill, and neither exercises practical authority over Greycliff Mill. Greycliff Mill is a privately owned business.

41.   Ms. Feek's July 21, 2024 Instagram post is false and defamatory in suggesting that Homestead Heritage has engaged in a practice of encouraging,

facilitating, enabling, or hiding abuse, and Ms. Feek was intentional, reckless, or at least negligent in making those comments or suggestions.

42.    On July 22, 2024, Ms. Feek published the WFAA video again.

43.    During the clip of the WFAA video Ms. Feek published on July 22, it is stated that Homestead Heritage is an "extreme group of believers putting children at risk…[and] the greatest sins are committed against children from emotional, to physical, even sexual abuse. Five individuals, either members of or with close ties to Homestead, have been convicted of sexually abusing a child within the Homestead community."

44.    The portion of the WFAA video Ms. Feek published on July 22, 2024 contains statements that are false and defamatory, and Ms. Feek was intentional, reckless, or at least negligent in publishing those statements. Homestead Heritage is not an "extreme group of believers," nor is it "putting children at risk" of "emotional," "physical," or "sexual abuse." The one then-current member of Homestead Heritage who had been convicted of abusing a child was convinced by members of Homestead Heritage to turn himself into the authorities and escorted to the police station by Homestead Heritage members. Homestead Heritage also reported non-members to the authorities upon receiving information about abuse.

45.    On August 23, 2024, Ms. Feek again posted on Instagram telling her over-48,000 followers that she and her sister Hopie are pursuing legal action against

Rory regarding her younger sister. She states that "[they] no longer believe [the Minor] is safe under [their] father's care." And that "[their] fears were further compounded when [they] discovered that [the Minor] was involved with an organization known for its troubling history of child abuse."

46.   Ms. Feek's August 23, 2024 statements on Instagram are false and defamatory, and Ms. Feek made the statements intentionally, recklessly, or at least negligently. Neither Homestead Heritage nor Heritage Restoration is "an organization known for its troubling history of child abuse." Not one of the Plaintiffs has encouraged, caused, hidden, or otherwise facilitated any abuse of children.

47.   Ms. Feek posted about Homestead Heritage again on August 25, 2024, linking a YouTube video titled, "And yet another Homestead Heritage protege arrested for abuse of a minor (2024)." Ms. Feek states, "[t]his was posted on YouTube just yesterday. They say he's being harbored at one of the Homestead Heritage locations."

48.   The video is regarding Timothy Vidaurreta. The video shows a picture of Mr. Vidaurreta wearing a Heritage Restorations hat and states that Mr. Vidaurreta is the son of "long time members at Homestead Heritage… born and raised at the Heritage compound in Waco, Texas." The video states that Mr. Vidaurreta "paid close attention to the lessons and examples of male entitlement and the role of women and children as objects to be used." The video continues to state that Mr.

Vidaurreta "was recently arrested for aggravated sexual assault of a minor with penetration" and that he "fled, as Heritage men do, and did not appear at his initial hearing." The video concludes by stating that Homestead Heritage declined to comment and is keeping it a secret. Of course, because Homestead Heritage has nothing to do with Mr. Vidaurreta, it has no secrets to keep. Further, Homestead Heritage was never asked for a comment and thus could not decline to comment. This video is clearly not a factual news story as it offers a "Trigger Warning" at the beginning and calls a Homestead Heritage minister a "Publicity ho for Homestead Heritage." There was no reasonable basis to believe that the video's statements about Homestead Heritage were truthful or legitimate.

49.    The video published by Ms. Feek on August 25, 2024 contains statements that are false and defamatory, and Ms. Feek acted intentionally, recklessly, or at least negligently in publishing the video containing those statements. Homestead Heritage does not teach or encourage (and thus Mr. Vidaurreta could not have possibly learned from Homestead Heritage) "lessons and examples of male entitlement and the role of women and children as objects to be used." The video also falsely suggests that it is a characteristic of "Heritage men" – which most viewers would interpret to mean either "a male member of Homestead Heritage" or "a male worker of Heritage Restorations – as "flee[ing]" from the authorities or other responsibilities. The video also fails to provide the important

17

information that Mr. Vidaurreta had not been a member of Homestead Heritage or an employee of Heritage Restorations for several years before his arrest, and that his alleged criminal actions took place years after he had left both his family and Homestead Heritage and Heritage Restorations.

50.     Ms. Feek's comments in the August 25, 2024 post publishing the video regarding Mr. Vidaurreta are also false and defamatory, and Ms. Feek acted intentionally, recklessly, or at least negligently in making those statements. Mr. Vidaurreta is not a "protégé" of any member of Homestead Heritage, and Homestead Heritage is not "harbor[ing]" him or in any way protecting him from arrest.

51.     On August 29, 2024, Taste of Country published the subject defamatory article[5] (the "Article") written by Ms. Liptak that makes and/or repeats several libelous claims that are not only unfounded but also have been unequivocally repudiated by law enforcement agencies, credible news outlets, and former and current Homestead members.

52.     The Article includes a screenshot of Ms. Feek's Instagram story that states she is pursuing legal action against Rory regarding her younger sister. Referring to Homestead Heritage, the screenshot states that the Feek sisters discovered "[the Minor] was involved with an organization known for its troubling history of child abuse."

---

[5] https://tasteofcountry.com/rory-feek-heidi-feek-homestead-heritage-child-abuse/

53.     The Article's accusations regarding Homestead Heritage are false and defamatory. Homestead Heritage neither has a "troubling history of child abuse," nor is it "known for its troubling history of child abuse." Rather, Ms. Feek and the Townsquare Defendants have used their far-reaching media presence to portray Homestead Heritage in a false light as having such as history.

54.     Additionally, the Article makes the following statements:

a.    "[T]he [Homestead Heritage] community has a lengthy track record of sexual and domestic abuse allegations, and multiple members have been convicted of sex crimes against minors."

This statement is false and defamatory, and the Townsquare Defendants acted intentionally, recklessly, or at least negligently in reporting the statement as true. The Homestead Heritage community does not have a "lengthy track record of sexual and domestic abuse allegations," and a single member was convicted of a sex crime against a minor **after** the crime was confessed to a Homestead Heritage minister and Homestead Heritage reported the abuse to authorities.

b.    "The sisters claim [the Minor] has already suffered injury while visiting a Homestead community."

This statement is intentionally misleading, and thus defamatory, and Ms. Feek and the Townsquare Defendants acted intentionally,

recklessly, or at least negligently in reporting the statement as true. On information and belief, both Ms. Feek and the Townsquare Defendants knew or should have known that the Minor suffered a minor injury while at Homestead Heritage after riding in a pony cart. Pointing to the Minor's injury in the context of discussing sexual abuse creates the completely false and inflammatory suggestion that the Minor suffered an abuse-related injury while on Homestead Heritage's property.

c.  "In 2012, the Texas Observer published a lengthy investigation into a series of allegations of child abuse, domestic abuse, and coverups within the group."

This statement is intentionally misleading, and thus defamatory, and the Townsquare Defendants acted intentionally, recklessly, or at least negligently in reporting the statement as true without additional context. Homestead Heritage provided a complete refutation of the allegations in the Texas Observer's publications. However, Townsquare Defendants willfully and recklessly did not include it.

d.  "Homestead Heritage has been at the center of more sex abuse allegations."

This statement is intentionally misleading, and thus defamatory, and the Townsquare Defendants acted intentionally, recklessly, or at least

negligently in reporting the statement as true without additional context. Except where Homestead Heritage has been instrumental in bringing perpetrators to justice, Homestead Heritage has not been involved in any credible allegations regarding sex abuse, much less at the "center" of any such allegations.

55.    Most egregiously, the Article incorporates a link to a bootleg video of the now-discredited WFAA News 8 report. By creating an active link to this story, which has been removed by WFAA, Townsquare Defendants engaged in a republication of this libelous story.

56.    The Article's intentional omission of exculpatory evidence, such as quotes from district attorneys and sheriff departments at the time of the news reports (2012), the complete failure to include testimony or interviews with Homestead, and an entire disregard for the abundant data available on Homestead Heritage's website (which Ms. Liptak evidently reviewed) and YouTube channels, demonstrates a blatant and reckless disregard for the truth.

57.    Further, the Townsquare Defendants have made no effort to contact Heritage to inquire about its version of events or to conduct even basic journalistic duties deemed necessary to provide fair and accurate reporting, demonstrating a willful disregard for truth in reporting.

58.     After the Article's publication, several other major media outlets picked up the statements made in the Article, including Fox News, The Daily Mail, and People Magazine, thus further spreading the Article's defamatory content and injuring the Plaintiffs.

59.     On August 29, 2024, Ms. Feek linked the Article on her Instagram Stories. Ms. Feek states, "recently [the Minor] was left in the care of a group with a well documented history of physical and sexual abuse of children. The Minor who has special needs, deserves to be in a safe and stable environment where her well-being is the top priority."

60.     Ms. Feek's August 29, 2024 Instagram comments accompanying the link to the Article are false and defamatory, and Ms. Feek acted intentionally, recklessly, or at least negligently by publishing these statements. It is completely false that either Homestead Heritage, Heritage Restorations, or the Brandstadts are a group "with a well-documented history of physical and sexual abuse of children." Not one of the Plaintiffs has encouraged, caused, hidden, or otherwise facilitated the "physical and sexual abuse of children."

61.     Defendants' repetition of these unsubstantiated claims, originally propagated by the Texas Observer and by WFAA, has exacerbated the harm caused to the community's reputation and subjected its members to public scorn and ridicule.

4891-7606-7811.10

62.     On August 31, 2024, Ms. Feek made additional Instagram posts about Homestead Heritage, Daniel Brandstadt, and Timothy Vidaurreta.

63.     In the August 31 Instagram post, Ms. Feek stated that there were numerous convicted pedophiles within Homestead. She continues, "did you know there is a fugitive in your wedding photo? His name is Daniel Brandstadt. Is he related to the Brandstadts [the Minor] stayed with?" As part of the post, Ms. Feek includes information from a civil lawsuit brought against Daniel Brandstadt in the US District Court for the Eastern District of Texas, Tyler Division, Case No. 6:22-CV-00396-JDK-KNM.

64.     Ms. Feek's August 31 Instagram post contains several false and defamatory statements, and Ms. Feek acted intentionally, recklessly, or at least negligently in making those false statements. Her claim that there are numerous convicted pedophiles within Homestead is completely false and defamatory. Furthermore, her accusation that Daniel Brandstadt is a "fugitive" is false and defamatory. The average person reading Ms. Feek's post would interpret "fugitive" to mean a person who is avoiding criminal charges or other serious legal matters. Mr. Brandstadt is a party to a pending civil case, in which he has appeared and participated.

65.     In the same August 31 Instagram post, Ms. Feek stated that Timothy Vidaurreta is "another Homestead Fugitive" that "fled his sexual assault of a minor

charge shortly before [Rory's] wedding. Former members of Homestead say he is hiding at one of the satellite branches, which includes Greycliff. His last Facebook photo shows him wearing a Heritage Restorations hat. Isn't that the Brandstadt's company? Is that who [the Minor] stayed with while you were on your honeymoon?"

66.     Ms. Feek's comments about Mr. Vidaurreta in her August 31 Instagram post are false and defamatory regarding the Plaintiffs, and Ms. Feek acted intentionally, recklessly, or at least negligently in making those statements. Mr. Vidaurreta has not been a member of Homestead Heritage or an employee of Homestead Restorations in several years. Calling Mr. Vidaurreta a "Homestead Fugitive" falsely implies that Homestead Heritage or Heritage Restorations either encouraged his criminal actions or has an ongoing relationship with him. Furthermore, Ms. Feek's efforts to connect Mr. Vidaurreta's criminal actions with the Brandstadts to suggest that the Brandstadts are engaged in similar criminal activities or are otherwise unfit to care for [the Minor] based on the mere fact that Mr. Vidaurreta worked for Heritage Restorations many years ago are false and defamatory.

67.     On September 1, 2024, Homestead Heritage published a blog post regarding the Article. The blog post states:

> This article contains multiple falsehoods that misrepresent our
> community and the values we uphold.

In its 51-year history, Homestead Heritage has consistently acted with integrity and in accordance with the law. When isolated incidents of misconduct occurred, our leadership took immediate and appropriate action, including reporting to law enforcement. McLennan County authorities have confirmed our cooperation in these matters.

Unfortunately, Taste of Country chose to publish unsubstantiated claims without contacting us for comment. Such actions serve only to mislead the public and harm innocent individuals. We remain committed to transparency, truth, and the well-being of our community.

We urge Taste of Country to retract these defamatory statements and issue a public apology to our community. As always, we trust that responsible journalism will ultimately prevail.

68.     On September 5, 2024, Ms. Feek responded to an Instagram comment on one of her posts warning her that she could be sued for calling Daniel Brandstadt a fugitive. The commentor cautions Ms. Feek to be careful calling someone a fugitive simply because they are being sued in a civil lawsuit. Rather than taking an opportunity to retract the statement, Ms. Feek responded by stating, "@crazyirish80 well he didn't show up for his court date and fled to another state . . . ."

69.     On Instagram, Ms. Feek has demonstrated that she is actively silencing anyone that disagrees with her statements about Plaintiffs.

70.     On September 10, 2024, Ms. Feek posted a video on her Instagram story captioned "getting comfortable blocking" which shows that she has blocked 95 people from viewing her social media content (not including other accounts created or operated by the blocked user).

71.     Among those blocked by Ms. Feek are Plaintiffs Matthew Brandstadt and Brian Brandstadt.

72.     Such actions substantially contribute to the spread of the defamatory comments by Ms. Feek and on her social media platform.

73.     As a result of each of the above-described acts, Plaintiffs have been damaged.

### C. Defendants' Defamatory Statements Have Harmed Plaintiffs, and Benefited Defendants Significantly

74.     Defendants' defamatory statements accuse Plaintiffs of crimes and/or extreme moral delinquency subjecting the Plaintiffs to disgrace, ridicule, odium, and/or contempt in their community and nationally, which is slander per se.

75.     The Defendants' libelous statements (including Townsquare Defendants' libelous Article and the republishing of the Article by Ms. Feek) have injured the Plaintiffs' reputations, lowering them in the estimation of their community and deterred others from associating with them. Examples of this can be seen by reading the numerous comments on Ms. Feek's Instagram posts. A selection of those comments is included here:

> o  You know what is most disturbing of all of this is? The facts are, Homestead Heritage is documented for committing child abuse happen amongst their members. Fact is, Rory and Rebecca were married at one of Homestead Heritage's locations. Fact is, [the Minor] was present

26

there at this location, and was left in the "care" of members of said community. There is a child who is special needs in the care of a community who is known for child abuse, but yet there are some of you who are more concerned that Rory's image will be tainted and accusing two sisters who are loving and being involved with helping protect their little sister. What kind of society is this where individuals are more concerned about a tarnished image than the welfare of a child?

- This comment was "liked" by 56 people, including Ms. Feek.

o "This whole thing reminds me of the Duggars and their cult religion."

- This comment was "liked" by 31 people, and Ms. Feek replied, "me too," in response.

o real life SVU happening here!! These girls were brutally abused in a myriad of ways and now their dad, never the picture of stability or goodness has spirited away their baby sister who has special needs, is trapped in a cult without any way to see or communicate with her sisters!!

76. A further example of injury to Plaintiffs' reputations and deterred members of the community from associating with them can be seen on a particular Reddit forum (r/Waco) and in response to post made by ProFriend92. The September 10, 2024, comment states, "I have been out to Homestead many times and have been

suspicious of their religious beliefs but have never heard these accusations. I'm very disappointed as they do have wonderful food and the handmade shops are impressive, but I won't be going back now. I hope your friend finds the help she needs to win against evil."

77.     Plaintiffs have suffered and continue to incur substantial damages as a result of Defendants' publication of the libelous articles including defamatory statements and misleading inferences.

78.     Defendants have substantially benefitted from the defamatory statements at the expense of Plaintiffs.

79.     The engagement on both the Article and on Ms. Feek's social media pages has been substantial.

80.     On information and belief, the advertising value equivalent of the visibility drawn by the statements and publications containing Defendants' defamatory statements (including impressions, page visits, and other additional social media and online attention) exceeds approximately $3,000,000.

81.     On August 29, 2024, Plaintiffs sent a retraction demand to the Townsquare Defendants, which was received on September 3, 2024.[6] The Townsquare Defendants have failed to retract the defamatory sections of the Article.

---

[6] *See* **Exhibit A** attached hereto and incorporated herein by reference.

82.     On September 6, 2024, Plaintiffs sent a retraction demand to Ms. Feek,[7] which she received by email on September 7, 2024. Ms. Feek has refused to retract the defamatory statements.

83.     Defendants have acted with malice by making their defamatory statements despite knowing the statements to be untrue.

84.     Defendants have acted with malice by making their defamatory statements for their own personal gain and with the intent to harm Plaintiffs.

85.     Defendants have acted with malice by refusing to provide retractions of their defamatory statements after being presented with the truth.

86.     To be clear, such acts are intentional doings of a wrongful act without just cause or excuse and with either an intent to injure Plaintiffs or under such circumstances that the law will imply an evil intent.

## Count One
### Defamation Per Se by Ms. Feek (All Plaintiffs)

87.     Plaintiffs reallege each of the allegations of the preceding paragraphs, 1 through 86, as if fully set forth herein.

88.     Ms. Feek has defamed Plaintiffs through her Instagram posts made on July 20 and 21, August 23, 25, 29, 31, and September 5, 2024, and continues to defame Plaintiffs.

---

[7] *See* **Exhibit B** attached hereto and incorporated herein by reference.

89.     Ms. Feek has published numerous comments accusing Homestead Heritage, Heritage Restorations, and the Brandstadts of promoting the abuse of children (including sexual abuse) or hiding incidents of abuse of children from the authorities. These statements are unequivocally false and have caused great harm to the Plaintiffs—as intended by Ms. Feek.

90.     For example, Ms. Feek falsely claimed there are **<u>numerous</u>** convicted pedophiles within Homestead Heritage.

91.     In truth, almost 20 years ago, a single Homestead Heritage member admitted he had engaged in wrongful activity with his own daughter, and Homestead Heritage reported the matter to the authorities. Homestead Heritage has also reported the wrongful activity of non-members to authorities. The government authorities involved in these situations have directly confirmed this record of turning criminals over to law enforcement in independent news reports, which are also available on their website.

92.     Ms. Feek has also falsely claimed that Daniel Brandstadt is a "**<u>fugitive</u>**."

93.     The truth is that Daniel Brandstadt is not the subject of any criminal case or investigation.

94.     This false claim is also damaging to Brian Brandstadt and his family—who Ms. Feek suggests is harboring an alleged fugitive.

95.     Ms. Feek falsely claims that Homestead Heritage is harboring fugitives.

96.     However, there is absolutely no factual basis for these claims—no members of Homestead Heritage are fugitives, and no members are harboring fugitives.

97.     Plaintiffs' reputations have been severely damaged by Ms. Feek's statements, false allegations and implications. The misleading statements and intended false inferences were designed to and did harm Plaintiffs' reputations both professionally and personally. Plaintiffs and their families have been subjected to hatred and contempt in their community, deterring people from associating with them.

98.     Ms. Feek caused substantial harm to Plaintiffs, as set forth herein, when she published her false and defamatory statements on Instagram.

99.     Ms. Feek knew the subject statements and implications were false concerning Plaintiffs or Ms. Feek knew that she had serious doubts as to the truth of the same.

## Count Two
### Defamation Per Quod by Ms. Feek (All Plaintiffs)

100.    Plaintiffs reallege each of the allegations set forth in paragraphs 1 through 86 as if fully set forth herein.

101.    Ms. Feek has defamed Plaintiffs through her Instagram posts made on July 20 and 21, August 23, 25, 29, and 31, and September 5, 2024, and continues to defame Plaintiffs.

102.   As set forth above, Ms. Feek has published numerous comments accusing Homestead Heritage, Heritage Restorations, and the Brandstadts of promoting the abuse of children (including sexual abuse) or hiding incidents of abuse of children from the authorities. These statements are unequivocally false and have caused great harm to the Plaintiffs.

103.   Ms. Feek acted maliciously, recklessly, or in bad faith by publishing the defamatory statements.

104.   Plaintiffs have been specially damaged by Ms. Feek's defamatory statements, and such damages are the natural and proximate consequence of the false and inflammatory statements.

## <u>Count Three</u>

### Defamation Per Se by Townsquare Defendants' Publication of the August 29, 2024 Article (Homestead Heritage)

105.   Plaintiffs reallege each of the allegations set forth in paragraphs 1 through 86 as if fully set forth herein.

106.   Townsquare Defendants published the libelous article headlined "Rory Feek's Daughters Are Pursuing Legal Action Against Him—Here's Why [Exclusive]," to the public on August 29, 2024.

107.   The Article contained defamatory statements and false implications about Plaintiffs.

108.   The Defendants, based on the evidence, knew the libelous information published was likely false and/or in need of further investigation and review. Defendants' failure to do so amounts to "actual malice." Defendants purposely avoided the truth, deliberately failed to investigate, and ignored the material available to them. Townsquare Defendants did not follow fundamental reporting obligations. Instead, they sidestepped facts publishing the dishonest and defamatory Article concerning the Plaintiffs to promote their narrative and distributing the Article as "investigative journalism" to the public.

109.   Townsquare Defendants knew their articles falsely characterized the Plaintiffs and their role in the narrative or recklessly disregarded the truth about Plaintiffs and their investigation when they published the libelous Article.

110.   Defendants' Article is libelous, dishonest, malicious, willful, and wanton demonstrating a conscious and purposeful disregard for the assured harm inflicted on the Plaintiffs and their families. Under these circumstances, punitive damages are entirely appropriate and warranted.

111.   The Townsquare Defendants' statements, set forth herein concerning Plaintiffs are libelous per se.

112.   The Articles' accusations and implications prejudiced and harmed the Plaintiffs and subjected them and their families to unjust ridicule, condemnation and caused other damages as set forth herein.

4891-7606-7811.10

113.    Townsquare Defendants have failed and refused to retract their false and defamatory statements.

114.    Plaintiffs demand compensatory in the amount of at least $250,000 and punitive damages against Townsquare Defendants in such amounts as may be awarded by the trier of fact, together with the costs of this action and such other amounts as it may show itself entitled in the premises.

### Count Four

**Defamation Per Quod by Townsquare Defendants' Publication of the August 29, 2024 Article (Homestead Heritage)**

115.    Plaintiffs reallege each of the allegations set forth in paragraphs 1 through 86 as if fully set forth herein.

116.    Townsquare Defendants have defamed Homestead Heritage by publishing the Article on the Taste of Country website.

117.    As set forth above, Townsquare Defendants' publication stating that Homestead Heritage promotes the abuse of children (including sexual abuse) or hides incidents of abuse of children from the authorities. These statements are unequivocally false and have caused great harm to Homestead Heritage.

118.    Townsquare Defendants acted maliciously, recklessly, or in bad faith by publishing the defamatory statements.

4891-7606-7811.10

119.   Homestead Heritage has been specially damaged by Townsquare Defendants' defamatory statements and such damages are the natural and proximate consequence of the false and inflammatory statements.

**Count Five**

**Unjust Enrichment (against All Defendants)**

120.   Plaintiffs reallege each of the allegations set forth in paragraphs 1 through 86 as if fully set forth herein.

121.   As a result of the defamation, Defendants have benefited through mistake, fraud, or other unconscionable conduct.

122.   Specifically, Ms. Feek has benefited through increased engagement on her social media platforms and media exposure. By making each of her defamatory statements regarding Plaintiffs, Ms. Feek has garnished the attention of major news platforms such as Fox News, People Magazine, and Taste of Country.

123.   Ms. Feek is capitalizing on the increased exposure to the detriment of Plaintiffs.

124.   Likewise, the Townsquare Defendants have received substantial monetary benefits as a result of publishing the Article.

125.   On information and belief, the advertising value equivalent of the visibility drawn by the statements and publications containing Defendants' defamatory statements (including impressions, page visits, and other additional social media and online attention) exceeds approximately $3,000,000.

126.   Such benefit to Defendants was gained at the expense of Plaintiffs' reputations.

## Count Six
### Intentional Infliction of Emotional Distress (against All Defendants)

127.   Plaintiffs reallege each of the allegations set forth in paragraphs 1 through 86 as if fully set forth herein.

128.   Defendants acted falsely with actual malice and reckless disregard for the truth by publishing the defamatory statements set forth above with the intention of causing the maximum harm to Plaintiffs' reputation, character, and integrity.

129.   The publication of the above statements intentionally slandered and defamed Plaintiffs to proximately cause them extreme emotional distress, mental anguish, embarrassment, and severe psychological distress utterly intolerable in a civilized society.

## Count Seven
### False Light Invasion of Privacy (against All Defendants)

130.   Plaintiffs reallege each of the allegations set forth in paragraphs 1 through 86 as if fully set forth herein.

131.   Defendants' publication of false statements placed Plaintiffs in a false light and Defendants caused those false statements to become public knowledge.

132.   Defendants' false statements subjected Plaintiffs to disgrace, ridicule and contempt from members of their community.

133.   As a result of Defendants' statements, Plaintiffs have suffered reputational damage as set forth above.

134.   Defendants' false statements have resulted in material loss to Plaintiffs due to the personal and professional reputational harm caused by the false statements.

135.   Plaintiffs demand compensatory, punitive, and exemplary damages in an amount which will adequately compensate them and punish Defendants for their actions and omissions.

WHEREFORE, Plaintiffs respectfully the following forms of relief for the wrongful libelous conduct of the Defendants as follows:

1. An injunction requiring Defendants to remove all defamatory materials from existing publications (including the Article and all posts on Instagram and any other social media), to publish retractions regarding the removal of the defamatory materials, and to cease generating defamatory publications regarding the Plaintiffs.

2. An award by the jury of compensatory damages of at least $250,000 and at least in an amount equal to the tainted benefit Plaintiffs have received from the flurry of media coverage they generated to compensate Plaintiffs for the damage caused, including the damage inflicted upon their reputation, their public ridicule and contempt, their standing in the community, their personal

humiliation, their inconvenience and aggravation and their mental anguish and suffering.

3. An award of punitive/exemplary damages given the conscious and deliberate conduct of the Defendants in engaging in oppression, fraud, wantonness, and malice in such amount as the jury deems necessary and just to first punish the Defendants by money damages for their conduct and secondly to deter the Defendants and others similarly situated from doing such wrongs in the future.

4. An award of money damages for each repetition of Ms. Feek's defamatory statements and the Townsquare Defendants' Article because the Defendants, as the original defamers, encouraged repetition at the time of the publication when they promoted "share" "like" and "comment" opportunities of the defamatory articles including Townsquare Defendants' native advertising campaign driving readers to their content.

5. Plaintiffs request an amount to be determined by a jury and such other, further or different relief which the Court finds appropriate.

**PLAINTIFFS DEMAND TRIAL BY STRUCK JURY.**

4891-7606-7811.10

Dated: September 16, 2024

_/s/ R. Aaron Chastain_
R. Aaron Chastain (CHA098)

*One of Attorneys for Plaintiffs*

OF COUNSEL
J. Graham Gilmore (GIL095)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
ggilmore@bradley.com

**DEFENDANTS TO BE SERVED**
**VIA PRIVATE PROCESS SERVER AS FOLLOWS:**

Heidi Caroline Feek
601 Paxton St
Florence, AL 35630

Townsquare Media Inc.
1 Manhattanville Road,
Suite 202
Purchase, NY 10577

Carena Elizabeth Liptak
526 Harvard St.
Rochester, NY 14607

4891-7606-7811.10